1  Steven A. Sherman, Esq., Bar No. 113621
   **FERGUSON, PRAET & SHERMAN**
2  A Professional Corporation
   1631 East 18th Street
3  Santa Ana, California  92705-7101
   (714) 953-5300 Telephone
4  (714) 953-1143 Facsimile
   ssherman@law4cops.com
5
   Attorneys for City of Garden Grove Defendants
6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 QUYEN KIM DANG, INDIVIDUALLY )   NO. SACV10-00338 DOC(MLGx)
   AND AS GUARDIAN AD LITEM FOR )
12 KENNY MINH CAO TRAN, A MINOR, )  **DEFENDANTS' NOTICE OF**
   AND PERSONAL REPRESENTATIVE )    **MOTION AND MOTION FOR**
13 OF ANDY TRAN, DECEASED;       )  **SUMMARY JUDGMENT OR**
   KENNY MINH CAO TRAN, A MINOR )   **ALTERNATIVELY, SUMMARY**
14 BY AND THROUGH HIS GUARDIAN   )  **ADJUDICATION OF ISSUES**
   AD LIETM, QUYEN KIM DANG; NAM )
15 VAN TRAN, BIOLOGICAL FATHER   )   **DATE: July 25, 2011**
   OF ANDY TRAN, DECEASED; BUA   )   **TIME: 8:30 a.m.**
16 THI PHAN, BIOLOGICAL MOTHER   )   **CTRM: 9-D**
   OF ANDY TRAN, DECEASED,       )
17                                )  *[Separate Statement of Undisputed*
               Plaintiffs,        )  *Facts & Conclusions of Law;*
18                                )  *[Proposed] Order; Declarations and*
   v.                             )  *Exhibits in Support Thereof, filed*
19                                )  *concurrently herewith]*
   CITY OF GARDEN GROVE; GARDEN   )
20 GROVE CHIEF OF POLICE JOSEPH   )
   M. POLISAR; GARDEN GROVE       )
21 POLICE OFFICER GENDREAU;       )
   GARDEN GROVE POLICE OFFICER    )
22 KARSCHAMROOM; TASER            )
   INTERNATIONAL, INC., AND DOES 1 )
23 TO 10, INDIVIDUALS; AND ROES 1 )
   TO 10, ENTITIES, INCLUSIVE,     )
24                                )
25             Defendants.        )
                                  )
26

27 ///

28 ///

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on July 25, 2011, in Courtroom 9-D of the

3  United States District Court, Central District of California, located at 411 W.

4  Fourth Street, Santa Ana, California, 90701, City of Garden Grove Defendants will

5  and do move this Court for summary judgment or in the alternative summary

6  adjudication of issues.

7       In June 2011, Counsel for the City of Garden Grove Defendants and

8  Plaintiffs' Counsel discussed at several depositions the basis for the contemplated

9  summary judgment.  Additionally, counsel for the Plaintiffs and Defendants have

10  met in person and on the telephone numerous times pursuant to Local Rule 7-3 in

11  an attempt to resolve the issues set forth in the meet and confer letter and

12  Memorandum of Points, however, they were unable do to so and as such, request

13  judicial intervention.

14       This motion will be made on the grounds that there are no genuine issues of

15  material facts as to Plaintiffs' federal claims.  This motion is further based on the

16  grounds that there are no genuine issues of material fact as to Plaintiffs' causes of

17  action brought under state law which are barred as a matter of law.  Therefore,

18  Defendants are entitled to judgment or summary adjudication as a matter of law.

19       In the event summary judgment is not granted in its entirety, the Court is

20  requested to order that the following issues have been adjudicated as being without

21  substantial controversy and no further proof thereof shall be required at the trial of

22  this action and further, that any final judgment in this action shall be based upon

23  the issues as so established in addition to any matters determined at trial.

24                              **ISSUES**

25       1.    That Plaintiffs' claim as alleged in the First Cause of Action against

26  the City of Garden Grove, Officer Gendreau and Officer Karschamroon for a

27  violation of 42 U.S.C. § 1983 pursuant to the Fourth and Fourteenth Amendments

28  (Wrongful Death) fails to state facts sufficient to constitute a cause of action.

1      2.     That Plaintiffs' claim as alleged in the Second Cause of Action against

2   the City of Garden Grove, Officer Gendreau and Officer Karschamroon for a

3   violation of 42 U.S.C. § 1983 pursuant to the Fourth Amendment (Survival Action)

4   fails to state facts sufficient to constitute a cause of action.

5      3.     That Plaintiffs' claim as alleged in the Third Cause of Action against

6   the City of Garden Grove, Officer Gendreau and Officer Karschamroon for

7   violation of 42 U.S.C. § 1983 pursuant to the Fourth and Fourteenth Amendment

8   (Deprivation of the Rights Plaintiffs to Familial Relationships with the Decedent)

9   fails to state facts sufficient to constitute a cause of action.

10     4.     That Plaintiffs' claim as alleged in the Fourth Cause of Action against

11  the City of Garden Grove, Officer Gendreau and Officer Karschamroon for

12  violation of California Civil Code § 52.1(violation of Civil Rights) fails to state

13  facts sufficient to constitute a cause of action.

14     5.     That Plaintiffs' claims as alleged in Fifth Cause of Action against the

15  City of Garden Grove, Officer Gendreau and Officer Karschamroon for assault and

16  battery fails to state facts sufficient to constitute a cause of action.

17     6.     That Plaintiffs' claim as alleged in the Sixth Cause of Action

18  (Negligence) fails to state facts sufficient to constitute a cause of action.

19     7.     That Plaintiffs' claim as alleged in the Seventh Cause of Action

20  (Negligent Infliction of Emotional Distress) fails to state facts sufficient to

21  constitute a cause of action.

22     8.     That Plaintiffs' claim as alleged in the Eighth Cause of Action

23  (Intentional Infliction of Emotional Distress) fails to state facts sufficient to

24  constitute a cause of action.

25     9.     If, in Paragraphs 1-17, Plaintiffs are attempting to assert a <u>Monell</u>

26  cause of action against the City of Garden Grove and City of Garden Police

27  Department based on the Fourth Amendment to the Constitution and 42 U.S.C. §

28  1983, Plaintiffs' allegations fail to state facts sufficient to constitute a cause of

1  action in that the City does not have an unconstitutional custom, policy or practice

2  that violates any Amendment or 42 U.S.C. § 1983.

3       In support of this Motion, Defendants refer this Court to this Notice, the

4  accompanying Memorandum of Points and Authorities, the concurrently filed

5  exhibits and declarations, the pleadings, files and records in this action, and all

6  other oral and documentary evidence which may be presented at the time of

7  hearing of the motion.

8  DATED: June 27, 2011                    FERGUSON, PRAET & SHERMAN
                                           A Professional Corporation
9

10                                            /s/ Steven A. Sherman
                                           Steven A. Sherman,
11                                         Attorneys for City of Garden Grove
                                           Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3    I.    INTRODUCTION.............................................. 1

4    II.   STATEMENT OF FACTS....................................... 1

5    III.  LEGAL ARGUMENT. ......................................... 7

6          A.    PLAINTIFFS' FIRST, SECOND, AND THIRD CAUSES OF
                 ACTION PURSUANT TO 42 U.S.C. § 1983 FAIL AS
7                A MATTER OF LAW ................................... 8

8                1.    THE OFFICERS' USE OF FORCE WAS
                       REASONABLE UNDER THE TOTALITY OF
9                      CIRCUMSTANCES.. ................................ 9

10               2.    QUALIFIED IMMUNITY BARS PLAINTIFFS
                       CLAIMS AGAINST THE INDIVIDUAL OFFICERS.. .... 11
11

12               3.    THE INDIVIDUAL OFFICERS ACTED
                       REASONABLY WITH RESPECT TO DECEDENT'S
13                     MEDICAL NEEDS................................. 15

14               4.    PLAINTIFFS CANNOT ESTABLISH A
                       CONSTITUTIONAL VIOLATION AGAINST
                       POLICE CHIEF POLISAR OR THE ENTITY
15                     DEFENDANTS.................................... 16

16               5.    THE SURVIVAL CLAIM BROUGHT BY
                       DECEDENT'S SUCCESSOR IN INTEREST FAILS
17                     DUE TO LACK OF CONSTITUTIONAL
                       VIOLATIONS, OR, THE APPLICATION OF
18                     QUALIFIED IMMUNITY .......................... 18

19               6.    DEFENDANTS ARE ENTITLED TO SUMMARY
                       JUDGMENT ON THE SUBSTANTIVE DUE
20                     PROCESS CLAIMS REGARDING FAMILIAL
                       RELATIONS BECAUSE THE OFFICERS DID NOT
21                     ACT WITH A PURPOSE TO CAUSE HARM........... 19

22         B.    PLAINTIFFS' FOURTH CAUSE OF ACTION FOR
                 VIOLATION OF THE BANE ACT (CAL.CIV.CODE § 52.1)
23               FAILS AS A MATTER OF LAW. ......................... 20

24         C.    PLAINTIFFS' ASSAULT AND BATTERY CAUSE OF
                 ACTION FAILS AS A MATTER OF LAW.................... 21
25
           D.    PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION FAILS
26               AS A MATTER OF LAW............................... 22

27         E.    PLAINTIFFS' NEGLIGENT INFLICTION OF EMOTIONAL
                 DISTRESS  CLAIM FAILS AS A MATTER OF LAW.. ........ 24
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.   PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

1

## TABLE OF AUTHORITIES

2

3 <u>Cases</u>

4 <u>Albright v. Oliver</u> (1994)
510 U.S. 266. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12, 19
5

6 <u>Allen v. City of Los Angeles</u> (9th Cir. 1993)
66 F.3d 1052. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7 <u>Allen v. Toten</u> (1985)
172 Cal.App.3d 1079. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
8

9 <u>Anderson v. Liberty Lobby, Inc.</u> (1986)
477 U.S. 242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10 <u>Balisteri v. Pacifica Police Dept.</u> (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . 11
901 F.2d 696
11

12 <u>Bay Area Rapid Transit District v. Superior Court of Alameda County</u> (1995)
38 Cal.App.4th 141. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

13 <u>Bryan v. MacPherson</u> (9th Cir. 2010)
630 F.3d 805. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
14

15 <u>Buckley v. Haddock</u> (11th Cir. Fla. 2008)
292 Fed. Appx. 791. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16 <u>Celotex Corp. v. Catrett</u> (1986)
477 U.S. 317 323. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
17

18 <u>Cole v. Fair Oaks Fire Protection Dist.</u> (1987)
43 Cal. 3d 148. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

19 <u>Cunningham v. Gates</u> (9th Cir. 2000)
229 F.3d 1271. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
20

21 <u>Curnow v. Ridgecrest Police</u> (9th Cir. 1991)
952 F.2d 321. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

22 <u>DeNieva v. Reyes</u> (9th Cir. 1992)
966 F.2d 480. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
23

24 <u>DeVillers v. County of San Diego</u> (2007)
156 Cal. App. 4th 238. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

25 <u>Draper v. Reynolds</u> (11th Cir. 2004)
369 F3d 1270. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
26

27 <u>Eastburn v. Reg'l Fire Prot. Auth.</u> (2003)
31 Cal.4th 1175. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 <u>Edgerly v. City and County of San Francisco</u> (9th Cir. 2010)
599 F.3d 946. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Edson v. City of Anaheim (1998)
63 Cal.App4th 1269. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Fairbank v. Wunderman Cato Johnson (9th Cir. 2000)
212 F.3d 528. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Forrester v. City of San Diego (9th Cir. 1994)
25 F.3d 804. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Gallegos v. City of Los Angeles (9th Cir. 2002)
308 F.3d 987. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Graham v. Conner (1989) 490 U.S. 386. . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12, 19

Goebel v. Taser, Intl. (N.D. Ohio 2007)
2007 U.S. Dist. LEXIS 68560. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gomon v. TRW, Inc. (1994)
28 Cal. App. 4th 1161. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Guiterrez v. City of San Antonio (5th Cir. 1998)
139 F.3d 441. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Guseman v. Martinez (D.Kan 1998)
1 F.Supp.2d 1240. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hansen v. Pierce County (W.D. Wa. 2006)
2006 U.S. Dist. LEXIS 51754. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Harlow v. Fitzgerald (1982)
457 U.S. 800. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Jeffers v. Gomez (9th Cir. 2001)
267 F.3d 895. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jensen v. City of Oxnard (9th Cir. 1998)
145 F.3d 1078. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Knox v. Southwest Airlines (9th Cir. 1997)
124 F.3d 1103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Liston v. County of Riverside (9th Cir. 1997)
120 F.3d 965. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Los Angeles v. Heller (1986)
475 U.S. 796. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Malley v. Briggs (1986)
475 U.S. 335. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Martinez v. County of Los Angeles (1996)
47 Cal. App. 4th 334. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mason v. W. Union Tel. Co. (1975)
52 Cal. App. 3d 429. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Matsushita Elec. Indust. Co. v. Zenith Radio Corp. (1986)
475 U.S. 574. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McCarthy v. Frost (1973)
33 Cal. App. 3d 872. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Monell v. Department of Social Services of City of New York (1978)
436 U.S. 658. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Moreland v. Las Vegas Metro. Police Dept. (9th Cir. 1998)
159 F.3d 365. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Porter v. Osborn  (9th Cir. 2008)
546 F.3d 1131. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Price v. Sery (9th Cir. 2008)
513 F.3d 962. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Rinker v. Napa County (9th Cir. 1987)
831 F.2d 829. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Romero v. Kitsap County (9th Cir. 1991)
931 F.2d 624. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ross v. Crcel Printing & Pub'g Co. (2002)
100 Cal. App. 4th 736. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Russo v. City of Cincinnati (6th Cir. 1992)
953 F2d 1036. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ruvalcaba v. City of Los Angeles (9th Cir. 1995)
64 F.3d 1323. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Saman v. Robbins (1999)
173 F.3d 1150. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Saucier v. Katz (2001)
533 U.S. 194. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Schumacher v. Halverson (D. Minn. 2006)
467 F. Supp. 2d 939. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Scott v. Henrich (9th Cir. 1994)
39 F.3d 912. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Tatum v. City and County of San Francisco (9th Cir. 2006)
441 F3d 1090 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tatum v. San Francisco (9th Cir. 2006)
441 F3d 1090. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tennessee v. Garner (1985)
471 U.S. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Terry v. Ohio (1968)
392 U.S. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

U.S. v. Brignoni-Ponce (1976)
422 U.S. 873. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

U.S. v. Franco-Munoz (9th Cir.1991)
952 F.2d 1055. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Cortez (1981)
449 U.S. 411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Venerable v. City of Sacramento (ED Cal 2002)
185 F.Supp2d 1128. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Wilkinson v. Torres (9th Cir. 2010)
610 F.3d 546. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Zelig v. Cnty. of Los Angeles (2002)
27 Cal.4th 1112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Federal Rules**

Rule 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rule 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rule 56(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**State Statutes**

Civil Code

Section 52.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Code of Civil Procedure

Section 377.30.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Government Code

Section 815. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Section 815.2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Section 815.2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Section 820.2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Section 820.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Penal Code

Section 835. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 835a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I.   INTRODUCTION

Plaintiffs' Complaint for Damages, which was filed on December 3, 2009, alleges ten (10) causes of action.  (Exb. 1, Complaint for Damages).  Two causes of action were directed only at Taser International for products liability and negligence, although those claims have since been dismissed.

This motion addresses only the eight (8) causes of action directed at the City of Garden Grove, the Garden Grove Police Department, Police Chief Joseph Polisar, and Police Officers Richard Gendreau and Daniel Karschamroon.  Those causes of action are: (1) Wrongful Death – 42 U.S.C. § 1983; (2) Survival Action – 42 U.S.C. § 1983; (3) Deprivation of Familial Relationships – 42 U.S.C. § 1983; (4) Violation of Civil Rights – Cal.Civ. Code 52.1(b); (5) Assault and Battery; (6) Negligence; (7) Negligent Infliction of Emotional Distress; and (8) Intentional Infliction of Emotional Distress.

In the more 11/2 years which have passed since this lawsuit was filed, a substantial amount of written discovery has been exchanged and the depositions of all percipient witnesses have now been completed.  As such, the "facts" of this case have now been established and, while the parties might differ on the interpretation of those facts and the legal theories applicable to them, this case has ripened to the point where summary judgment is appropriate, especially on the threshold issue of qualified immunity.

Although the outcome of this case was the unfortunate death of Andy Tran, the undisputed facts of this case will demonstrate that the minimal use of force applied by the involved officers (i.e. a single application of the Taser), as dictated by the totality of the circumstances, was objectively reasonable and that there is no need for this case to be presented to a jury in order to reach the same conclusion.

## II.   STATEMENT OF FACTS

On September 3, 2008, at approximately 11:29 a.m., Garden Grove police officers Richard Gendreau and Daniel Karschamroon were dispatched, separately,

to 13252 Barnett Way, in the City of Garden Grove.  The officers responded to a report of a "violent, mentally ill male" that was trying to break into the residence, that someone had been assaulted, and that there was a "weapon" involved.  Prior to arriving on scene, Officer Karschamroon tried to clarify with Dispatch if there was any further description of the weapon(s), and was informed that it was unknown as to what type of weapon was involved. (Karschamroon Decl., ¶¶ 1-5; Gendreau Decl., ¶¶ 1-5; Exb. 2 Transcript/Audio 911 recording; Exb. 3, Dispatch CAD.

Police Dispatch as well as the CAD printout noted the male's (decedent Andy Tran) description as "mental case."  The "event" remarks on the printout noted that the calling party (Plaintiff Nam Van Tran, Andy's father) indicated his son was crazy.  When asked if his son had weapons, Plaintiff Tran affirmed.  Dispatch could hear a child crying in the background.  Plaintiff Tran also indicated to Dispatch he was dizzy and he kept repeating to "send someone right now, send someone right now. Take to hospital."  Dispatch indicated that Plaintiff Tran was out of breath and would not answer any questions as to the whereabouts of his son, Andy Tran, at the moment.  (Karschamroon Decl., ¶ 6 Gendreau Decl., ¶ 6; Exb. 2, Transcript/Audio 911 recording; Exb. 3, Dispatch CAD.).

Both Officer Karschamroon and Officer Gendreau arrived at approximately 11:36 a.m. However, Officer Karschamroon was the first to arrive at the residence. As described by Dispatch, there was a male individual who appeared to be trying to break into or enter the residence through a window.  There was a broken screen window next to him and as Officer Karschamroon approached him, his body halfway into the window.  It appeared he was trying to grab something from inside the window.  (Karschamroon Decl., ¶ 7; Exb.3, Dispatch CAD).

Officer Karschamroon, who had been advised by Dispatch that the subject's name was Andy Tran, called out "Andy" three to four times to get his attention.  At that time, Andy Tran stopped what he was doing at the window, slowly turned around, and faced Officer Karschamroon.  Andy was instructed to come down from

1  the porch, which he eventually did, approaching Officer Karschamroon with his
2  hands at his sides.  (Karschamroon Decl., ¶¶ 8-10).  As Andy approached, Officer
3  Karschamroon could see his eyes and face.  Andy had a blank stare, and appeared to
4  be confused or unsure of what was going on.  Andy stopped his approach when he
5  was approximately 20 feet from the officer, who then asked Andy to come closer.
6  As Andy slowly approached to within 10 feet of Officer Karschamroon's location,
7  he was instructed to stop.  Andy stopped, but maintained his blank expression.
8  (Karschamroon Decl., ¶¶ 11, 12).

9      Officer Karschamroon then instructed Andy to put his hands on top of his
10  head and turn around.  He moved very slowly, but Andy did eventually comply
11  with the directive.  At the point when Andy had his hands on top of his head,
12  Officer Karschamroon approached him and told him to interlock his fingers, which
13  he did.  Andy never spoke, but did appear to understand what was being said.
14  (Karschamroon Decl., ¶¶ 13, 14).

15      Officer Karschamroon grabbed hold of Andy's hands, and sought to reassure
16  Andy by saying "there's nothing wrong," "we're just here to help you," and to
17  "calm down" and "relax." However, it was important to get Andy secured and
18  handcuffed as the call indicated he was a violent mental individual with a weapon.
19  (Karschamroon Decl., ¶¶ 14).  As Officer Karschamroon placed the first handcuff
20  on Andy's right wrist, he felt Andy's hands immediately tense up into fists.  As
21  Officer Karschamroon was trying to separate Andy's now-clenched fists, Officer
22  Richard Gendreau arrived. (Karschamroon Decl., ¶ 15).

23      Officer Gendreau noticed that Officer Karschamroon was struggling to get
24  Andy's arms behind his back, so he immediately ran over to assist.   Officer
25  Karschamroon informed Officer Gendreau that one handcuff was secured, but Andy
26  was not allowing himself to be cuffed.  Officer Karschamroon had a concern that
27  the encounter might turn violent due to Andy's reaction when the first handcuff was
28  placed on his wrist.  (Karschamroon Decl., ¶¶ 16, 17; Gendreau Decl., ¶¶ 7, 8).

1    Andy continued to resist, failed to obey commands, and did not speak.
2  Officer Gendreau could see that Andy's method of resistance was "complete
3  rigidity"; both of his arms were up, his fists were balled, and he was shaking.
4  Despite Officer Karschamroon's best efforts to pull Andy's arms down behind his
5  back, his arms would not move.  (Karschamroon Decl., ¶ 16 Gendreau Decl., ¶ 9).
6  Concerned about a possible attempt to flee or run, Officer Gendreau moved in front
7  of Andy to block that avenue of escape.  From that position, Officer Gendreau
8  could see that Andy was shaking, and he actually began to growl.  Andy was not
9  blinking, his pupils appeared to be dilated, and he had saliva coming from the
10  corner of his mouth, almost as though he was foaming at the mouth.  Officer
11  Gendreau felt like Andy was looking straight through him.  (Karschamroon Decl., ¶
12  16 Gendreau Decl., ¶¶ 10, 11).

13    In a casual manner, Officer Gendreau said words to the effect of, "Hey, dude,
14  just calm down," and advised Andy to relax, put his hands behind his back, and that
15  "we're not here to hurt you."  Officer Karschamroon was reminding Andy to relax
16  as well, but he was also shaking Andy's still clenched hands to let him know he still
17  needed to be handcuffed.  (Karschamroon Decl., ¶¶ 19, 20; Gendreau Decl., ¶¶ 12,
18  13).  Andy continued to ignore the officers' orders, and concern grew that the
19  dangling handcuff could be used as a weapon if Andy decided to swing his arm.  As
20  Officer Karschamroon continued to try to separate Andy's hands Officer Gendreau
21  took hold of Andy's left hand to assist in pulling down his arm.  Even with the
22  effort of both officers, they could not get Andy's arm down from the flexed/locked
23  position.  A pain compliance technique performed by Officer Gendreau did nothing.
24  (Karschamroon Dec., ¶¶21,22; Gendreau Dec., ¶¶12,14-16).

25    Officer Gendreau thought that if a fight ensued, it was going to be a bad one
26  given the strength that Andy had exhibited (i.e. the inability of both officers to pull
27  down his arms from their flexed position).  Officer Karschamroon was similarly
28  concerned about officer safety.  (Karschamroon Decl., ¶ 21; Gendreau Decl., ¶ 19).

As Andy continued to resist officer commands by remaining rigid and non-responsive, Officer Gendreau decided to take out his Taser.[1]  Officer Gendreau informed Andy several times that if he did not comply, he would be tased.[2]  Andy continued to resist, so Officer Gendreau deployed his taser once in Andy's thigh for a cycle of five seconds.[3]  (Karschamroon Decl., ¶¶ 22-25; Gendreau Decl., ¶¶ 20-23).  Once Andy was tased, he began to fall backward toward Officer Karschamroon, who caught him and laid him forward onto the ground.  Andy also released his grip, and once the taser cycle stopped, the officers were able to bring his left arm behind his back and apply the other handcuff.  (Karschamroon Decl., ¶ 26; Gendreau Decl., ¶¶ 24, 25).

At approximately 11:38 a.m., Officer Gendreau advised over his police radio that the situation was stable, but that Andy had been tased and he requested Garden Grove Fire Department to respond to examine Andy per their protocol when a subject is tased.  At approximately 11:39 a.m., Garden Grove Fire Department was dispatched to the incident scene in reference to Andy being tased.  (Karschamroon Decl., ¶ 27; Gendreau Decl., ¶ 26; Exb. 3 Dispatch CAD)

After he was handcuffed and while still on the ground, Andy looked up, to his right and to his left.  Officer Gendreau continued to instruct him to relax, and informed him they were in the process of getting him medical attention.  When

---

[1] Officer Gendreau also attempted to activate his audio recording system by pushing the button on his microphone, and he pushed the button to activate the recording system in his police unit. Although he had tested both these systems at the beginning of his shift, neither activated.  It was later determined that my vehicle was too far away from my position (100 or more feet) for the systems to be remotely activated. (Gendreau Decl., ¶ 20)

[2] Officer Gendreau was trained that one of the best ways to get a subject on the ground is to tase them in the leg.  His goal was to take Andy into custody without any further risk of injury to Andy, Officer Karschamroon or himself. (Gendreau Decl., ¶ 22)

[3] Based on the nature of the call and in his rush to handle same, Officer Karschamroon did not activate his recorder or his in-unit video during this incident.  The situation evolved so rapidly that activation was not at the forefront of his thoughts. (Karschamroon Decl., ¶ 41)

1  asked if he was doing okay, Andy remained unresponsive but continued to look
2  around.  (Karschamroon Decl., ¶ 30; Gendreau Decl., ¶ 27).

3      After the tasing, a third officer arrived on scene, Officer Amir El-Farra.  The
4  officers decided to roll Andy over on his back to observe him from the front.  His
5  eyes were closed. Officer Gendreau opened Andy's eyes and they were dilated.
6  Because of that and his labored breathing, the officers decided to sit him up against
7  Officer El-Farra's leg, thinking it might help with Andy's breathing and help snap
8  him out of the trance he appeared to be in.  (Karschamroon Decl., ¶¶ 29-34;
9  Gendreau Decl., ¶¶ 31-32; El-Farra Decl., ¶¶6-8).

10     As Andy was seated upright and leaning against Officer El-Farra's leg, his
11 breathing was observed to be labored but no officer believed the situation to be
12 critical.  Officer Karschamroon saw nothing to suggest a life-threatening situation,
13 Officer Gendreau "felt comfortable" upon hearing the approach of the medics,[4] and
14 Officer El-Farra could see Andy's chest rising and falling.  (Karschamroon Decl., ¶
15 35; Gendreau Decl., ¶¶ 33-34; El-Farra Decl., ¶¶10). Officer Gendreau asked
16 Officer El-Farra to stay with Andy as he and Officer Karschamroon ascertained the
17 welfare or condition of the calling party or family.[5]  Officer El-Farra estimates that
18 he was in front of the residence, with Andy, for approximately 15 to 20 seconds
19 thereafter prior to medics arriving.  (Karschamroon Decl., ¶¶ 35; Gendreau Decl., ¶
20 33; El-Farra Decl., ¶ 11-12).

21
22 _____

23 [4]  Given Andy's dilated pupils in bright sunlight and his rapid pulse, Officer
24 Gendreau did consider that he may be under the influence of a controlled
   substance, but he never had the opportunity to do a full evaluation.  (Gendreau
25 Decl., ¶ 37

26 [5] Whereas the initial call had come out as a mentally ill individual who was violent,
27 had struck someone, and that weapons were involved, the officers believed it was
   important to ascertain that no one in the residence had been injured or attacked by
28 Andy.  (Karschamroon Decl., 36; Gendreau Decl., ¶¶ 33-34)

1      Officer Gendreau and Karschamroon contacted Andy's family to see if any of

2  them were injured.  It appeared the only individual who sustained an injury was

3  Plaintiff Bua Thi Phan, who had sustained a scraped elbow.  Her injury was

4  measured and photographed.  (Karschamroon Decl., ¶¶37-38; Gendreau Decl., ¶ 35;

5  Exb. "4", Photograph of Injury; Exb. 5, Photograph of Screen)

6      Officer El-Farra was approached by a medic whom he then informed about

7  the tasing and Andy's labored breathing.  The medic checked for Andy's pulse and

8  informed Officer El-Farra that he needed to start CPR. This took Officer El-Farra

9  completely by surprise.  When he had looked away from Andy to speak to the

10  medic, Andy had been breathing.  At no time did Officer El-Farra hear or see Andy

11  stop breathing, or notice any other physical difficulties.   (El-Farra Decl., ¶ 13-17).

12      After clearing the house, the Officers Gendreau and Karschamroon started

13  toward the front door.  They could then see the paramedics performing CPR on

14  Andy.  This was a "shock" and "surprise" to both officers.   (Karschamroon Decl.,

15  ¶¶39; Gendreau Decl., ¶ 38).  Although the paramedics rendered emergency care

16  and transported to the hospital, Andy Tran did not survive.   Toxicology results

17  revealed substantial levels of Diphenhydramine and  Trihexylphenidyl in his system

18  at the time of death.  (Exb. 6, Toxicology Report).  The Coroner listed the cause of

19  death as "Cardiac arrhythmia during struggle with law enforcement due to dilated

20  hyertropic cardiomyopathy with diphenhydramine and trihexylphenidl

21  intoxication." (Exb. 7, Autopsy Report)

22  **III.**   **LEGAL ARGUMENT**

23      Summary judgment is proper if the pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits show that there

25  is no genuine issue as to any material fact and that the moving party is entitled to

26  judgment as a matter of law.  FRCP 56.  The moving party bears the initial burden

27  of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v.

28  Catrett (1986) 477 U.S. 317 323.  However, the moving party has no burden to

1  negate or disprove matters on which the non-moving party has the burden of proof

2  at trial, but need only to point out to the Court through argument an absence of

3  evidence to support the non-moving party's case.  Id. at 325; Fairbank v.

4  Wunderman Cato Johnson (9th Cir. 2000) 212 F.3d 528, 532.

5         The burden then shifts to the non-moving party to designate specific facts

6  showing there is a genuine issue for trial.  Celotex, supra, 477 U.S. at 324.  That

7  requires more than simply showing that there is some metaphysical doubt as to

8  material facts; there must be evidence on which the jury could reasonably find for

9  the non-moving party.  Matsushita Elec. Indust. Co. v. Zenith Radio Corp. (1986)

10  475 U.S. 574, 586; Anderson v. Liberty Lobby, Inc. (1986) 477 U.S. 242, 252.

11  Partial summary judgment of issues is proper if grounds for summary judgment on

12  all causes of action is not established, at which time the Court may make an order

13  specifying which facts are deemed to be without substantial controversy.  FRCP

14  56(d).

15  **A.    PLAINTIFFS' FIRST, SECOND, AND THIRD CAUSES OF ACTION**
16  **PURSUANT TO 42 U.S.C. § 1983 FAIL AS A MATTER OF LAW**

17         Plaintiffs allege that Andy Tran's civil rights were violated by the

18  defendants' use of excessive force, pursuant to 42 U.S.C. § 1983.  To state a cause

19  of action under 42 U.S.C. § 1983, a plaintiff must show "(1) that the conduct

20  complained of was committed by a person acting under color of state law; and (2)

21  that the conduct deprived the plaintiff of a constitutional right.  Rinker v. Napa

22  County (9th Cir. 1987) 831 F.2d 829, 831 [citation]."  Balisteri v. Pacifica Police

23  Dept. (9th Cir. 1990) 901 F.2d 696, 699.

24         Claims of excessive force which arise in the context of an arrest, detention or

25  investigatory stop of a free citizen are analyzed under the Fourth Amendment

26  reasonableness standard.  Graham v. Conner (1989) 490 U.S. 386, 394-395;

27  Forrester v. City of San Diego (9th Cir. 1994) 25 F.3d 804, 806.  The Fourteenth

28  Amendment has been held inapplicable to excessive force cases where the incidents

of arrest are never complete, such as the case here.  See, Guiterrez v. City of San

1    Antonio (5th Cir. 1998) 139 F.3d 441, 452; Guseman v. Martinez (D.Kan 1998) 1

2    F.Supp.2d 1240.

3          **1.      THE OFFICERS' USE OF FORCE WAS REASONABLE
                     UNDER THE TOTALITY OF CIRCUMSTANCES.**

4          Because a reasonableness test is incapable of precise definition or mechanical

5    application, its proper application requires careful attention to the facts and

6    circumstances of each particular case, including the severity of the crime at issue,

7    whether the suspect poses an immediate threat to the safety of the officers or others,

8    or whether he is actively resisting arrest or attempting to evade the detention by

9    flight.  Tennessee v. Garner (1985) 471 U.S. 1, 8-9.  These factors are not exclusive,

10   however, and the totality of the particular circumstances of each case must be

11   considered.  Forrester, supra, 25 F.3d at 806, n.2.

12         The reasonableness inquiry in excessive force cases is an objective one, the

13   question being whether the defendants' actions are objectively reasonable in light of

14   the facts and circumstances confronting them, without regard to their underlying

15   intent or motivation and without the "20/20 vision of hindsight."  Graham, 490 U.S.

16   at 396-397.  The individual defendants herein were not required to use the least

17   intrusive degree of force possible; they were required only to act within a

18   reasonable range of conduct.  See, Scott v. Henrich (9th Cir. 1994) 39 F.3d 912, 915

19   [requiring officers to find and choose least intrusive alternative would require them

20   to exercise super human judgment].  An officer's conduct is judged based upon the

21   circumstances and facts relevant to the determination made by the officer at the

22   time the conduct is performed; if an officer's actions are objectively reasonable in

23   light of the facts and circumstances confronting them, without regard to their

24   underlying intent or motivation, then the officer has acted in conformity with the

25   Constitution.  Graham v. Connor, supra, 490 U.S. at 397.

26         A police officer may briefly detain a suspect for investigation of possible

27   criminal activity if there exists "specific and articulable facts" that warrant his

28   suspicion.  Terry v. Ohio (1968) 392 U.S. 1.  Otherwise stated, "the Fourth

1  Amendment allows police to conduct a brief, investigatory search or seizure, so

2  long as they have a reasonable, articulable suspicion that justifies their actions."

3  Gallegos v. City of Los Angeles (9th Cir. 2002) 308 F.3d 987, 990.

4         A threat to the safety of police officers involved also justifies detention.  See,

5  Allen v. City of Los Angeles (9th Cir. 1993) 66 F.3d 1052, 1057 (upholding

6  detention of passenger although he was "not responsible" for driver's behavior);

7  Ruvalcaba v. City of Los Angeles (9th Cir. 1995) 64 F.3d 1323, 1328 (holding that

8  all occupants of validly stopped vehicle may be ordered to step out of it).  In such

9  cases, the interest in protecting officer safety, which is both legitimate and weighty,

10 is balanced against the intrusion on the individual's interest of in liberty and

11 dignity, and "the public interest in officer safety prevail[s]".  Ruvalcaba, 64 F.3d at

12 1326.

13        In determining whether a reasonable suspicion existed prior to the detention,

14 the totality of the circumstances must be considered.  United States v. Cortez (1981)

15 449 U.S. 411, 417.  In assessing whether criminal activity is afoot, law enforcement

16 officers may rely upon common sense conclusions about human behavior.  Id. at

17 418.  "Reasonable suspicion" is less than probable cause, U.S. v. Brignoni-Ponce

18 (1976) 422 U.S. 873, 880, and "the facts used to establish 'reasonable suspicion'

19 need not be inconsistent with innocence."  U.S. v. Franco-Munoz (9th Cir.1991)

20 952 F.2d 1055, 1057.

21        The conduct of both Officer Gendreau and Karschamroon was entirely

22 reasonable given the circumstances.  It cannot be disputed that these officers were

23 responding to a 911 call of a male terrorizing residents, perhaps with a weapon, and

24 attempting to enter through a window.  Despite commendable efforts by officers to

25 try to calm Andy by calling him by name and telling him they were there to help,

26 Andy was verbally and physically unresponsive, yet resisting the officers' attempts

27 to secure him with considerable strength.  Virtually any reasonable police officer

28

1    would perceive these circumstances as a very volatile situation in which the

2    Plaintiffs were at risk of (or had already suffered) immediate and serious harm.

3         The officers were forced to make a split second decision whether or not there

4    could be injuries to the residents (Plaintiffs) as concern for their own safety steadily

5    increased as Andy Tran resisted all attempts to secure him.  Andy was warned

6    several times prior to the use of the Taser, yet he did not cease his resistance.  When

7    the Taser was deployed, it was to Andy's leg.  The Fourth Amendment does not

8    require an officer to simply shrug his shoulders and allow a threatening situation to

9    escalate, nor does it require them to withstand possible assaults.  Simply stated, the

10   officers acted reasonably to secure Andy Tran, and only impermissible "20/20

11   hindsight" could suggest otherwise.  Without a constitutional violation, plaintiffs' §

12   1983 claims fail as a matter of law.

13        **2.    QUALIFIED IMMUNITY BARS PLAINTIFFS CLAIMS
                    AGAINST THE INDIVIDUAL OFFICERS.**

14        Police officers are entitled to qualified immunity "insofar as their conduct

15   does not violate clearly established statutory or constitutional rights of which a

16   reasonable person would have known."  <u>Liston v. County of Riverside</u> (9th Cir.

17   1997) 120 F.3d 965, 975, citing <u>Harlow v. Fitzgerald</u> (1982) 457 U.S. 800, 818.

18   The qualified immunity defense allows for errors in judgment and protects "all but

19   the plainly incompetent or those who knowingly violate the law.  …If officers of

20   reasonable competence could disagree on the issue [whether or not a specific action

21   was constitutional], immunity should be recognized." <u>Malley v. Briggs (1986)</u> 475

22   U.S. 335, 341; see also <u>Knox v. Southwest Airlines</u> (9th Cir. 1997) 124 F.3d 1103,

23   1107 ("The test allows ample room for reasonable error on the part of the

24   [government official]").

25        The Supreme Court further stated that the unlawfulness of the official action

26   must be apparent when viewed in light of pre-existing law.  <u>Anderson v. Creighton</u>

27   (1987) 483 U.S. 635, 640.  The standard therefore provides that "regardless of

28   whether the constitutional violation occurred, the officer should prevail if the right

1   asserted by the appellant was 'not clearly established' or the officer could have

2   reasonably believed that his particular conduct was lawful." <u>DeNieva v. Reyes</u> (9th

3   Cir. 1992) 966 F.2d 480, 484-485, quoting <u>Romero v. Kitsap County</u> (9th Cir. 1991)

4   931 F.2d 624, 627.

5         In <u>Saucier v. Katz</u> (2001) 533 U.S. 194, the Supreme Court held that

6   qualified immunity is an immunity from suit, not a mere defense to liability, and

7   must be determined at the earliest possible stage.  The Ninth Circuit has recognized

8   the "broad discretion that must be afforded to police officers who face tense

9   situations and the importance of granting immunity even when officers make

10  mistakes."  <u>Jeffers v. Gomez</u> (9th Cir. 2001) 267 F.3d 895, 909.  "[I]n discussing …

11  the need for 'deference to the judgment of reasonable officers on the scene,' [] the

12  [Supreme] Court said: … 'officers can have reasonable, but mistaken, beliefs as to

13  the facts establishing the existence of probable cause or exigent circumstances, for

14  example, and in those situations courts will not hold that they have violated the

15  constitution.'"  <u>Jeffers</u>, 267 F.3d at 909, citing <u>Graham v. Conner</u> (1989) 490 U.S.

16  386 and <u>Saucier v. Katz</u>, <u>supra</u>.  "If an officer reasonably, but mistakenly, believed

17  that a suspect was likely to fight back, for instance, the officer would be justified in

18  using more force than in fact was needed." <u>Saucier</u>, at 205.  Even if a defendant's

19  conduct was unconstitutional, he is nonetheless shielded from liability if he

20  reasonably believed that his conduct was lawful.  <u>Id</u>.

21        The qualified immunity inquiry has two parts: (1) Was the law governing the

22  officers' conduct clearly established?, and (2) Under that law, could a reasonable

23  officer have believed his conduct was lawful?  <u>Jeffers</u>, <u>supra</u>., 267 F3d at 910. With

24  regard to the first question as to whether or not the law governing the officers'

25  conduct was clearly established, the burden is on Plaintiffs to establish that the right

26  in question was clearly established at the time of this incident.  <u>Romero v. Kitsap</u>

27  <u>County</u> (9th Cir. 1991) 931 F2d 624, 627.  Moreover, the right must have been

28  clearly established in the context of the circumstances faced by these officers.

1   Jensen v. City of Oxnard (9th Cir. 1998) 145 F3d 1078, 1082.  If the law did not put

2   the officers on notice that their conduct would be clearly unlawful, summary

3   judgment based on qualified immunity is appropriate.  Saucier, supra., 503 U.S. at

4   202.  The relevant, dispositive inquiry in determining whether a right is clearly

5   established is whether it would be clear to a reasonable officer that his conduct was

6   unlawful in the situation he confronted.  Id.

7        In the instant case, the question is whether it would have been clear to a

8   reasonable police officer in the position of these Garden Grove officers that the

9   application of the Taser to Andy Tran violated his *Fourth Amendment* rights.  With

10   regard to those cases involving the application and even multiple applications of the

11   Taser, numerous courts addressing the issue have in fact determined that such

12   applications were *not* violative of the Constitution or that each and every officer

13   involved in those cases has been entitled to qualified immunity on summary

14   judgment.  See e.g.:  Schumacher v. Halverson, 467 F. Supp. 2d 939, 944, 951 (D.

15   Minn. 2006) (suspect resisted arrest by pulling away from the officer twice and then

16   locking his arms around a post); Hansen v. Pierce County, 2006 U.S. Dist. LEXIS

17   51754 (W.D. Wa. 2006)(suspect struggling to prevent his hands from being placed

18   behind his back tased several times after breaking free); Goebel v. Taser, Intl., 2007

19   U.S. Dist. LEXIS 68560 (N.D. Ohio 2007) (suspect threatened to kill officers and

20   threw a glass vase and other items at them); Draper v. Reynolds, 369 F3d 1270,

21   1277 (11th Cir. 2004) (use of Taser reasonable force to respond to "hostile,

22   belligerent, uncooperative" conduct during traffic stop); Russo v. City of

23   Cincinnati, 953 F2d 1036 (6th Cir. 1992)(potentially suicidal and homicidal

24   individual with knife who did not threaten officers); Buckley v. Haddock, 292 Fed.

25   Appx. 791 (11th Cir. Fla. 2008)(plaintiff tasered twice after placed under arrest for

26   refusing to sign a traffic ticket, dropped to the road and refused to get up and was

27   noncompliant with commands); Bryan v. MacPherson, 630 F.3d 805, 824 (9th Cir.

28   2010)(qualified immunity protected officer who, without warning, tased driver

1    stopped for seatbelt violation who was unarmed, stationary, standing fifteen to

2    twenty-five feet from officer).

3         Thus, the only "clearly established law" available to these Defendant officers

4    would in fact cause any reasonable police officer to believe that the applications of

5    the Taser to Andy Tran under these circumstances was "reasonable".  Given that

6    Plaintiffs cannot meet their initial burden of establishing that the applications of the

7    Taser under the contours of these facts constituted a "clearly established"

8    constitutional violation, these officers are necessarily entitled to qualified immunity.

9         While there is certainly no question that an individual has a constitutional

10   right to be free from excessive force under the *Fourth Amendment*, the Supreme

11   Court has made it clear that the courts may not deny summary judgment on a

12   qualified immunity claim based on the assertion of such a general right.  In *Saucier*,

13   the Court imposed the following analysis:

14        "The concern of the immunity inquiry is to acknowledge that
          reasonable mistakes can be made as to the legal constraints on
15        particular police conduct.  It is sometimes difficult for an officer to
          determine how the relevant legal doctrine, here excessive force, will
16        apply to the factual situation the officer confronts.  An officer might
          correctly perceive all of the relevant facts, but have a mistaken
17        understanding as the whether a particular amount of force is legal in
     those circumstances.  If the officer's mistake as to what the law requires is
18   reasonable, however, the officer is entitled to the immunity defense."  Id. at 205.

19        Here, while Plaintiffs will undoubtedly hypothesize that use of the Taser

20   application to Andy Tran under these circumstances should have caused any

21   reasonable officer to somehow know that it was excessive, the undisputed facts and

22   the established law are entirely to the contrary.  Moreover, while Plaintiffs will

23   likely attempt to argue that these officers should have somehow magically known

24   that Andy Tran was simply "delusional" and not a threat, the truth is  nobody knows

25   what would have happened had the Taser not been deployed.  What is known is that

26   when faced with the totality of circumstances confronting the Garden Grove

27   officers, a reasonable officer could have made the same decision.

28

1       While the plaintiffs may suggest that the officers could have or should have

2   done something other than applying a Taser to Andy Tran, the appropriate inquiry

3   is whether the officers acted reasonably, not whether they had less intrusive

4   alternatives available to them.  <u>Scott v. Henrich</u> (9th Cir. 1994) 39 F3d 912, 915.

5   Further, the plaintiffs might also argue (in hindsight) that the application of the

6   Taser was somehow the cause of death for Andy Tran.  However, the issue on

7   summary judgment is <u>not</u> the cause of death, but whether these officers, *even if*

8   *mistaken*, reasonably believed that the application of the Taser under these

9   circumstances was reasonable.  As previously noted, the officer utilizing the Taser

10  in this case relied upon extensive training and experience when electing to use less-

11  lethal force to bring the situation under control.  There is no question that these

12  officers are entitled to qualified immunity in this case, so summary judgment should

13  be granted.

14      **3.    THE INDIVIDUAL OFFICERS ACTED REASONABLY WITH RESPECT TO DECEDENT'S MEDICAL NEEDS.**

15      Throughout discovery, it has become apparent that Plaintiffs have begun to

16  develop an alternative theory, that being that officers somehow failed to properly

17  care for Andy Tran after he had been taken into custody.  This theory seemingly

18  arises out of an allegation that Andy Tran was briefly placed on his stomach after

19  handcuffing and then propped up against the leg of Officer El-Farra.  Unfortunately,

20  this theory also quickly fails.  While it is likely that Andy Tran was on his stomach

21  for two very brief (i.e. seconds) periods after he had been handcuffed, it is also

22  undisputed that he was breathing, albeit it laboriously, following the Taser

23  application.  Moreover, it is also undisputed that in an effort to make Andy Tran's

24  breathing easier, he was positioned in an upright position while awaiting the arrival

25  of the EMT medics.  Once the medics arrived on scene, they had control over the

26  treatment of Andy Tran and not any of the Defendant officers.

27      Although all of the aforementioned qualified immunity analysis would apply

28  equally to this issue, the Ninth Circuit has recently resolved this question in favor of

1  the individual officers in a remarkably similar case.  <u>Tatum v. San Francisco</u> (9th

2  Cir. 2006) 441 F3d 1090.  Although no Taser was used in *Tatum,* an individual who

3  had struggled with officers over a very minor arrest was placed on his stomach for

4  approximately ninety (90) seconds while handcuffed.  When arresting officers

5  noticed that the arrestee seemed to be in some distress, they called for an

6  ambulance, but did not attempt CPR or any other first aid.  Ultimately, much like

7  Andy Tran, the individual died.  Upholding the dismissal of all claims on summary

8  judgment, the Ninth Circuit held:

9      "We hold that a police officer who promptly summons the necessary
       medical assistance has acted reasonably for purposes of the *Fourth*
10     *Amendment,* even if the officer did not administer CPR."  *Ibid., 441*
       *F3d at 1099.*

11     In the instant case, officers routinely called for EMT medics before Andy

12  Tran even displayed the slightest signs of distress.  Moreover, while waiting for the

13  arrival of the medics, these officers recognized the first signs of distress and

14  attempted to make Andy Tran more comfortable.

15     Once again, while Plaintiffs might hypothesize any number of (unsupported)

16  theories about the actual cause of the death of Andy Tran, none of them are relevant

17  to the allegations against these Defendants and the Ninth Circuit has clearly

18  established that all of these Defendants would nonetheless still be entitled to

19  summary judgment.

20  **4.    PLAINTIFFS CANNOT ESTABLISH A CONSTITUTIONAL**
21  **VIOLATION AGAINST POLICE CHIEF POLISAR OR THE**
    **ENTITY DEFENDANTS.**

22     Because the individual officers are entitled to qualified immunity, the Entity

23  defendants are also entitled to dismissal of all federal claims as a matter of law.

24  The dispositive authority is <u>Los Angeles v. Heller</u> (1986) 475 U.S. 796, in which

25  the Supreme Court held that a public entity is <u>not</u> liable for 1983 claims when the

26  individual officer, acting in the course of his official capacity, inflicted no

27  constitutional harm to the plaintiff.

28

1     As the Supreme Court has noted:

2     "If a person has suffered no constitutional injury at the hands of the
3     individual police officer, the fact that the departmental regulations
might have *authorized* the use of constitutionally excessive force <u>is
4     quite beside the point.</u>  <u>Heller</u>, 106 S.Ct. at 1573.

5     While *Heller* necessarily ends the inquiry as to potential City liability, it is

6 also clear that Plaintiffs have zero evidence to support any so-called *Monell* claim

7 against the City.  Although Plaintiffs set forth the standard boilerplate "custom,

8 policy, or official act of the City" language in Paragraphs 11 and 12 of their First

9 Amended Complaint, such bare allegations are insufficient to overcome summary

10 judgment.  <u>FRCP 56(c).</u>

11     Under <u>Monell v. Department of Social Services of City of New York</u> (1978)

12 436 U.S. 658, local governments are considered "persons" for purposes of Section

13 1983 and may be held liable for monetary damages in cases where "the action that

14 is alleged to be unconstitutional implements or executes a policy statement,

15 ordinance, regulation, or decision officially adopted and promulgated by that body's

16 officers."  <u>Id.</u> at 690.  A local government may not be sued under a theory of

17 respondeat superior for injuries inflicted solely by its employees or agents.  Id. at

18 691; <u>Anderson v. Warner</u> (9th Cir. 2006) 451 F.3d 1063, 1070.

19     Rather, a plaintiff must demonstrate that the government's official policy or

20 custom was the "moving force" responsible for infliction of her injuries.  <u>Monell</u>,

21 436 U.S. at 694.  Under <u>Monell</u>, a plaintiff may establish municipal liability by

22 demonstrating that "(1) the constitutional tort was the result of a longstanding

23 practice or custom which constitutes the standard operating procedure of the local

24 government entity; (2) the tortfeasor was an official whose acts fairly represent

25 official policy such that the challenged action constituted official policy; or (3) an

26 official with final policy-making authority delegated that authority to, or ratified the

27 decision of, a subordinate."  <u>Price v. Sery</u> (9th Cir. 2008) 513 F.3d 962, 966.  In

28 addition, a supervisor may be held liable under Section 1983 for "1) their own

1   culpable action or inaction in the training, supervision, or control of subordinates;

2   2) their acquiescence in the constitutional deprivation of which a complaint is

3   made; or 3) for conduct that showed a reckless or callous indifference to the rights

4   of others." Edgerly v. City and County of San Francisco (9th Cir. 2010) 599 F.3d

5   946, 961 (quoting Cunningham v. Gates (9th Cir. 2000) 229 F.3d 1271, 1292.

6         Here, there is no evidence which implies that the City of Garden Grove or

7   Chief Polisar had any policy, practice or custom that infringed upon the either their

8   constitutional rights, or specifically, one that caused an unreasonable seizure or the

9   application of excessive force upon Andy Tran.  The declaration of Police Chief

10  Kevin Raney, submitted herewith, demonstrates that the City of Garden Grove has

11  no policy, practice, or custom authorizing or condoning the use of excessive force

12  or any other unlawful conduct alleged in plaintiff's First Amended Complaint

13  (Raney Decl., filed herewith).  In his declaration, Chief Raney also provides a

14  description of the hiring, training, and review of police officers by the Garden

15  Grove Police Department, as well as the procedure for review of citizens'

16  complaints.

17        The burden of establishing municipal liability remains with the plaintiffs

18  under the standards set forth by the Supreme Court in Pembauer v. Cincinnati

19  (1986) 475 U.S. 469, 480-481, and plaintiffs cannot meet this burden.   In sum,

20  plaintiffs' Monell claim fails for lack of proof.  Thus, summary judgment should be

21  entered in favor of the City and Chief Polisar.

22        **5.       THE SURVIVAL CLAIM BROUGHT BY DECEDENT'S**
23                **SUCCESSOR IN  INTEREST FAILS DUE TO LACK OF**
                 **CONSTITUTIONAL VIOLATIONS, OR, THE APPLICATION**
                 **OF QUALIFIED IMMUNITY**
24
25        In § 1983 actions, the survivors of an individual killed as a result of an

26  officer's excessive use of force may assert a Fourth Amendment claim on that

27  individual's behalf if the relevant state's law authorizes a survival action.  42 U.S.C.

28  § 1988(a); Moreland v. Las Vegas Metro. Police Dept. (9th Cir. 1998) 159 F.3d

    365, 369.  Under Cal. Code Civ. Proc. § 377.30, a survival action may be

1   commenced by a decedent's personal representative or, if none, by the decedent's
2   successor-in-interest.  Here, plaintiff Quyen Kim Dang is alleged to be bringing a §
3   1983 survival action in her capacity as successor in interest and personal
4   representative of decedent, Andy Tran (Complaint, ¶ 25).  This "survival action" is
5   alleges a violation of the Fourth and Fourteenth amendments on the basis that the
6   defendants subjected Andy Tran to excessive force and were "deliberately
7   indifferent" to his medical needs. (Complaint, ¶ 27).

8       All claims of excessive force implicate only the Fourth Amendment.  <u>See,</u>
9   <u>Graham v. Connor</u> (1989) 490 U.S. 386, 395; <u>see also</u> <u>Albright v. Oliver</u> (1994) 510
10  U.S. 266, 273 (plurality opinion) (stating that, where a particular amendment
11  provides an explicit textual source of constitutional protection against a particular
12  sort of government behavior, that amendment must be the guide for analyzing
13  claims concerning it).  As previously set forth, Andy Tran's Fourth Amendment
14  rights were either not violated, or the conduct underlying any such violations is
15  shielded by qualified immunity.  Furthermore, as discussed previously, the
16  plaintiff's claim of "deliberate indifference" to Andy Tran's medical needs is
17  foreclosed by <u>Tatum v. City and County of San Francisco</u> (9th Cir. 2006) 441 F3d
18  1090 (analyzing the issue as a Fourth Amendment issue and holding that officers
19  who promptly summon medical assistance have "acted reasonably" for purposes of
20  the Fourth Amendment).  Because there is no actionable underlying constitutional
21  violation that Andy Tran could pursue had he survived, his successor in interest
22  fares no better.  Summary judgment on the survival claim should therefore be
23  granted.

24      **6.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
25           ON THE SUBSTANTIVE DUE PROCESS CLAIMS
             REGARDING FAMILIAL RELATIONS BECAUSE THE
26           OFFICERS DID NOT ACT WITH A PURPOSE TO CAUSE
             HARM**
27      While the person who claims excessive force was directed at him or her can
28  only raise a Fourth Amendment claim, a parent who claims loss of the

1  companionship and society of his or her child, or vice versa, raises a different

2  constitutional claim.  Curnow v. Ridgecrest Police (9th Cir. 1991) 952 F.2d 321,

3  325.  The Ninth Circuit recognizes that parents and children have a constitutionally

4  protected liberty interest under the Fourteenth Amendment in the companionship

5  from such relationships.  Id., see also, Moreland v. Las Vegas Metro. Police Dept.

6  (9th Cir. 1998) 159 F.3d 365, 371.

7       Official conduct that "shocks the conscience" in depriving that interest is

8  cognizable as a violation of due process.  Wilkinson v. Torres (9th Cir. 2010) 610

9  F.3d 546, 554.  The "shocks the conscience" standard may be met by a showing that

10 an officer engaged in excessive force with "deliberate indifference" or that he "acted

11 with a purpose to harm . . . unrelated to legitimate law enforcement objectives."

12 Porter v. Osborn  (9th Cir. 2008) 546 F.3d 1131, 1137.  However, the Ninth Circuit

13 counsels that "our cases . . . require that when an officer encounters fast paced

14 circumstances presenting competing public safety obligations, the *purpose to harm*

15 *standard must apply*."  Id. at 1139 (emphasis added).

16      Thus, under this standard, plaintiffs have the burden of demonstrating that the

17 defendant officers acted with a purpose to harm Andy Tran that was unrelated to

18 legitimate law enforcement objectives.  It is simply inconceivable that plaintiffs

19 could ever meet this extremely heightened "purpose to harm" standard based on the

20 undisputed facts set forth by Defendants.  Accordingly, summary judgment as to

21 these claims must be granted.

22 **B.   PLAINTIFFS' FOURTH CAUSE OF ACTION FOR VIOLATION OF**
   **THE BANE ACT (CAL.CIV.CODE § 52.1) FAILS AS A MATTER OF**
23 **LAW**

24      The Bane Act, codified as a component of the Unruh Civil Rights Act at Civil

25 Code § 52.1, was enacted to curb the rise of "hate crimes" and provides that a

26 person may bring a cause of action "in his or her own behalf" against anyone who

27 "interferes by threats, intimidation or coercion, with the exercise or enjoyment" of

28 any constitutional or statutory right.

Section 52.1 does not provide a right of action for the parents or children of a decedent; rather, it only provides for a personal cause of action for the person who has been subjected to violence or threats which interfered with that person's constitutional rights.  Bay Area Rapid Transit District v. Superior Court of Alameda County (1995) 38 Cal.App.4th 141, 144.  "The Bane Act is simply not a wrongful death provision. It clearly provides for a *personal* cause of action for the victim of a hate crime" and is "limited to plaintiffs who themselves have been the subject of violence or threats."  Id. [emphasis in original].  Moreover, to the extent that the claim is arguably brought through decedent's successor in interest as part of a "survival action," such a claim fails as there is no evidence to support that defendant officers wrongfully interfered with any of Andy Tran's constitutional rights.

## C.   PLAINTIFFS' ASSAULT AND BATTERY CAUSE OF ACTION FAILS AS A MATTER OF LAW.

Plaintiffs' assault and battery cause of action is presumably brought on behalf of all the plaintiffs in their individual capacities as well as by plaintiff Quyen Kim Dang in her capacity as successor in interest of the decedent.  Because no evidence exists that supports a claim that plaintiffs were themselves assaulted and/or battered by any of the defendants, only the claim brought in the capacity of successor in interest will be addressed further.

As to the successor in interest claim, in order to establish a common law battery claim against a peace officer, plaintiff must establish the elements of the tort (an *unprivileged* touching, causing damages).  Plaintiff also has the burden of proving that the use of force was unreasonable.  In this regard, the state law tort of assault and battery is inextricably intertwined with the analysis of plaintiff's 42 U.S.C. § 1983 claim.  See, Edson v. City of Anaheim (1998) 63 Cal.App4th 1269.

In Edson, police officers attempted to make a routine traffic stop on a vehicle which had no taillights.  The vehicle engaged law enforcement officials in a high speed chase, which ended in a foot pursuit.  A police officer ran after the suspect,

1  who eventually turned on the officer and reached toward his waistband, as if for a

2  weapon.  The officer shot the suspect, who died from the gunshot wound.  The

3  officer testified at trial that, had the suspect obeyed his verbal commands to "stop,"

4  he would have never been shot.

5          The Court held that the plaintiff had the initial burden of proving all facts

6  necessary to establish that the defendant acted unreasonably in the use of force

7  against the plaintiff.  Because a police officer may use reasonable force to make an

8  arrest, prevent escape, or overcome resistance, and need not desist in the face of

9  resistance, the prima facie battery case is not established unless and until the

10  plaintiff proves that unreasonable force was used.  Edson at 1272-1273.  "It makes

11  sense to 'surround the police who make these on-the-spot choices in dangerous

12  situations with a fairly wide zone of protection in close cases…'" [Citation

13  omitted]. …Unless a plaintiff can show that unnecessary force was used, courts will

14  protect the officer."  Id. at 1273-1274.  The Edson Court further noted:

15          "[w]e must never allow the theoretical, sanitized world of our
          imagination to replace the dangerous and complex world that
16          policemen face every day. What constitutes 'reasonable' action may
          seem quite different to someone facing a possible assailant than to
17          someone analyzing the question at leisure." Edson, supra, 63
          Cal.App.3d at 1274-1275, quoting Martinez v. County of Los Angeles
18          (1996) 47 Cal. App. 4th 334, 343.

19          The analysis of plaintiff's state law assault and battery claim is essentially

20  identical to that performed under his 1983 claim.  See, Saman v. Robbins (1999)

21  173 F.3d 1150, 1157 ("case for battery is not established under California law

22  unless the plaintiff proves that an officer used unreasonable force ...").  Both claims

23  turn on the *reasonableness* of the officers actions.  Since plaintiff cannot prevail

24  under section 1983 – as explained previously – summary judgment should be

25  granted on the cause of action for assault and battery as well.

26  **D.    PLAINTIFFS' NEGLIGENCE CAUSE OF ACTION FAILS AS A
        MATTER OF LAW.**

27          Plaintiffs' sixth cause of action alleges "negligence" on the basis that

28  "defendants owed decedent and plaintiffs a duty of due care, and that duty was

breached" by failing to "exercise due care in dealing with the decedent proximately causing his death."  (Complaint, ¶ 43).   The claim is thus redundant and of little if any import.  Insofar as the defendants acted reasonably and the force employed was not excessive, the claim fails as a matter of law.  No other duty exists upon which the plaintiff can base their claim.

Moreover, under California Government Code § 815, public entities cannot be held liable in tort except as specifically provided by statute.  Cal. Gov't Code § 815.  A public entity's direct liability for a tort must be founded on a specific statute apart from the general tort principles in California Civil Code § 1714.  DeVillers v. County of San Diego (2007) 156 Cal. App. 4th 238, 251 (discussing Zelig v. Cnty. of Los Angeles (2002) 27 Cal.4th 1112, and Eastburn v. Reg'l Fire Prot. Auth. (2003) 31 Cal.4th 1175.  Plaintiffs have not identified a statutory basis for supporting their claim of direct liability against the City of Garden Grove, its police department, or Chief Polisar, who is also protected by the immunity afforded by Government Code § 820.2.  That Section provides that a public employee is not liable for an injury when the act or omission upon which liability is premised "was the result of the exercise of discretion vested in him, whether or not such exercise be abused."  Id.   Further, even if a duty could be found lurking in the woodwork against the individual officers, the claim would fail anyway.  The conduct of investigations and arrests self-evidently reflects "an exercise of discretion for which a peace officer may not be held liable in tort".  McCarthy v. Frost (1973) 33 Cal. App. 3d 872, 875.  Moreover, California Government Code§ 820.4 creates immunity for acts and omissions taken to execute and enforce the law other than for false arrest or false imprisonment.

Pursuant to Government Code § 815.2, the city and police department cannot be held liable for any counts where their employees are immune.  Gov't Code §

1  815.2(b)[6]   Thus, Defendants owed Plaintiffs no duty, or, if they did, they are

2  immune from liability.  Either way, their negligence claims fail.

3  **E.    PLAINTIFFS' NEGLIGENT INFLICTION OF EMOTIONAL
       DISTRESS CLAIM FAILS AS A MATTER OF LAW.**

4          In addition to their generic "negligence" claim, the plaintiff's also allege a

5  seventh cause of action for negligent infliction of emotional distress.  (Complaint,

6  ¶¶ 45-49).  Although the claim does not distinguish which plaintiffs are pursuing

7  the claim or in what capacity it is being brought, it can be inferred that only Andy

8  Tran's parents are doing so.  (Complaint, ¶ 46; "the entire incident was personally

9  observed by Decedent Andy Tran's parents").  To the extent that the claim is

10 couched as a "survival" tort brought by the successor in interest, pain and suffering

11 damages are not recoverable in such an action pursuant to state law or under 42

12 U.S.C. § 1983.  Venerable v. City of Sacramento (ED Cal 2002) 185 F.Supp2d

13 1128, 1133.

14          When bringing a claim for negligent infliction of emotional distress, a

15 plaintiff must show serious emotional distress actually and proximately caused by

16 *wrongful* conduct by a defendant who should have foreseen that the conduct would

17 cause such distress.  Cole v. Fair Oaks Fire Protection Dist. (1987) 43 Cal. 3d 148,

18 155 9 (emphasis added).   The shortcomings of this cause of action are largely the

19 same as with plaintiffs' ordinary negligence claim, namely, the individual officers'

20 conduct was reasonable and such conduct is otherwise cloaked with the immunities

21 provided by Government Code §§ 820.2 and 820.4.  Further, a defendant's liability

22 for physical injury to the victim is the foundation for a bystander cause of action.

23 The bystander cannot recover for emotional distress if there is no wrongdoing by

24 the defendant, even if witnessing an upsetting event.  Allen v. Toten (1985) 172

25

26  [6] " Except as otherwise provided by statute, a public entity is not liable for an injury
27  resulting from an act or omission of an employee of the public entity where the
    employee is immune from liability." Gov. Code, § 815.2(b)

28

1   Cal.App.3d 1079 1084 (wife who witnessed wounding of husband by police could

2   not maintain a bystander claim when there was no excessive force; no primary

3   liability to the husband barred wife's claim).

4          The plaintiffs cannot establish any wrongful act committed against Andy

5   Tran. As such, there is no primary liability upon which to base a "bystander" claim

6   of negligent infliction of emotional distress. Summary judgment is warranted.

7   **F.    PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL
          DISTRESS CLAIM FAILS AS A MATTER OF LAW.**

8          Plaintiffs' eighth cause of action alleges intentional infliction of emotional

9   distress.  (Complaint, ¶¶ 50-55).  Again, it appears that only Andy Tran's parents

10  are pursuing the claim.  To prevail on this claim, plaintiffs must demonstrate that

11  the defendants engaged in extreme and outrageous conduct.  <u>See, e.g.</u>, <u>Gomon v.</u>

12  <u>TRW, Inc.</u> (1994) 28 Cal. App. 4th 1161, 1172.  "Extreme and outrageous conduct

13  is that which goes beyond all possible bounds of decency so as to be regarded as

14  atrocious and utterly intolerable in a civilized community."  <u>Id.</u> at 1172.  "Whether

15  treated as an element of the prima facie case or as a matter of defense, it must also

16  appear that the Defendants' conduct was unprivileged.'"  <u>Ross v. Crcel Printing &</u>

17  <u>Pub'g Co.</u> (2002) 100 Cal. App. 4th 736, 745.

18         Here, because the defendants' conduct was a lawful, it must follow that the

19  conduct was not outrageous as a matter of law.  <u>See</u>, <u>Mason v. W. Union Tel. Co</u>.

20  (1975) 52 Cal. App. 3d 429, 440.  And by necessary inference the employment of

21  reasonable force in the process of making the arrest or detention is also privileged.

22  <u>See</u>, <u>Cal. Penal Code § 835</u> ("The person arrested may be subjected to such restraint

23  as is reasonable for his arrest and detention.");  <u>id.</u> § 835a ("Any peace officer who

24  has reasonable cause to believe that the person to be arrested has committed a

25  public offence may use reasonable force to effect the arrest, to prevent escape or to

26  overcome resistance.").  Hence, the Plaintiffs' claims must fail.

27  ///

28

1    IV.    **CONCLUSION**

2           For the foregoing reasons, Defendants are entitled to judgment on each of and

3    on all of Plaintiff's claims herein.  Accordingly, this motion for summary judgment

4    and or summary adjudication should be granted in its entirety.

5    DATED: June 27, 2011                    FERGUSON, PRAET & SHERMAN

6                                            A Professional Corporation

7                                            By:   /s/ Steven A. Sherman

8                                            Steven A. Sherman