1  Sean Hennessey, State Bar No. 157005
   THE LAW OFFICE OF SEAN HENNESSEY
2  8231 Westminster Blvd.
   Westminster, CA 92683
3  Tel. (949) 280-1257
   Fax: (714) 898-7449
4  Email: seanhennesseyesq@gmail.com

5  Liem H. Do, State Bar No. 129029
   LIEM H. DO & ASSOCIATES, APLC
6  8231 Westminster Blvd.
   Westminster, CA 92683
7  Tel. (714) 898-7579

8  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUYEN KIM DANG, INDIVIDUALLY AND AS A GUARDIAN AD LITEM FOR "KMT," A MINOR, AND PERSONAL REPRESENTATIVE OF ANDY TRAN, DECEASED; KENNY MINH CAO TRAN, A MINOR BY AND THROUGH HIS GUARDIAN AD LITEM, QUYEN KIM DANG; NAM VAN TRAN, BIOLOGICAL FATHER OF ANDY TRAN, DECEASED; BUA THI PHAN, BIOLOGICAL MOTHER OF ANDY TRAN, DECEASED, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF GARDEN GROVE; GARDEN GROVE CHIEF OF POLICE JOSEPH M. POLISAR; GARDEN GROVE POLICE OFFICER GENDREAU; GARDEN GROVE POLICE OFFICER KARSCHAMROON; TASER INTERNATIONAL, INC., AND DOES 1 TO 10, INDIVIDUALS; AND ROES 1 TO 10, ENTITIES, INCLUSIVE, <br><br> Defendants | Case No. SACV10-00338 DOC (MLGx) <br><br> **PLAINTIFF QUYEN KIM DANG'S NOTICE OF PURCHASE OF ANNUITY FOR "KMT," A MINOR, PURSUANT TO COURT'S ORDER APPROVING SETTLEMENT AND MINOR'S COMPROMISE** |

**TO COURT AND ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLAINTIFF QUYEN KIM DANG HEREBY GIVES NOTICE THAT, pursuant to the Court's order approving the settlement and minor's compromise on April 17, 2012, an Annuity Contract, created for minor "KMT," was purchased through BHG Structured Settlements, Inc. from the Berkshire Hathaway Life Insurance Company of Nebraska. The Annuity Contract was signed and went into effect on May 9, 2012.

Please find enclosed a copy of the Berkshire Hathaway annuity policy, a copy of the Qualified Assignment and Release Agreement, and a copy of the Corporate Guarantee which are together attached to this document as Exhibit A.

DATE: October 17, 2012

BY: /s/ Sean Hennessey
SEAN HENNESSEY, Esq.
Attorney for the Plaintiffs

DATE: October 17, 2012

BY: /s/ Liem H. Do
LIEM H. DO, Esq.
Attorney for Plaintiffs

Enclosed.

# EXHIBIT A



**EPS Settlements Group**
*The Structured Settlements Company*

August 31, 2012

Liem H. Do
Liem H. Do & Associates
8231 Westminster Blvd.
Westminster, CA 92683

Re:  K

Dear Liem:

Enclosed are the following documents for your client, along with an extra set for your file:

- Duplicate of the Berkshire Hathaway annuity policy

- Copy of the fully executed Qualified Assignment

- Guarantee

The original annuity policies will be retained by the Assignee, BHG Structured Settlements, Inc. Please review these documents and let us know if you have any questions.

We have emailed a copy of the above documents to Steve Sherman for his records and for the City of Garden Grove.

It has been a pleasure to have been of assistance, and I look forward to the opportunity to work with you again.

Sincerely,

Melissa S. Parsons

Enclosures

# Berkshire Hathaway Life Insurance Company of Nebraska

## GENERAL INFORMATION SHEET

**HOW TO CONTACT US:**

Phone: 402-916-3100

Address: Berkshire Hathaway Life Insurance Company of Nebraska
ATTN: Structured Settlements Department/Annuity Department
3024 Harney St.
Omaha, NE 68131

Business Hours: 8:00 AM to 4:30 PM Central Time, Monday through Friday

**PAYMENT OPTIONS:**
Payments by Mail:
Payments are mailed 4 mail days prior to the due date. All checks are sent by First Class Mail.

Payments by Direct Deposit (Electronic Funds Transfer):
Funds are transferred into your account on the due date, or the last business day before the due date.

For your convenience, we offer Direct Deposit services for your payments. To request Direct Deposit, you, your bank, and any joint accountholders must complete our Direct Deposit Authorization Form, M4800, and return it to us. Once we receive your completed form, it may take up to two months for Direct Deposit to be established, as we must first submit a test to your bank to be certain the information is correct.

**REPLACEMENT OF PAYMENTS:**
If you do not receive a check sent by mail within four (4) business days following the due date, notify Berkshire Hathaway Life Insurance Company of Nebraska. Upon receipt of such notification and verification that such check was not previously negotiated, Berkshire Hathaway Life Insurance Company of Nebraska shall promptly mail, by First Class mail, a replacement check. **PLEASE NOTE:** If you do not receive a check sent by mail to your financial institution, Berkshire Hathaway Life Insurance Company of Nebraska will not reissue the check mailed to the financial institution until ten (10) business days after the date payment was due (this does not apply to payments sent electronically).

**ADDRESS CHANGES:**
All address changes must be submitted in writing at least 30 days prior to the effective date of the change. All changes must include the Payee's ORIGINAL signature or the legal guardian(s) ORIGINAL signature or if a Payee is a minor, the ORIGINAL signature of a parent of that Payee.

If your payment is being mailed to your financial institution, or is deposited directly into your account, it is of the utmost importance to keep us informed of your current residence address for correspondence.

**REQUESTS FOR BENEFIT INFORMATION OR DOCUMENTATION:**
For the protection of our Payee's, all requests for benefit information or copies of documentation must be submitted in writing and must include the Payee's ORIGINAL signature. For the protection of our Payees we will release benefit information to the Payee only if very specific information is included authorizing release to a third party. We will not release copies of documents to anyone other than the Payee.

**BENEFICIARY DESIGNATIONS:**
All beneficiary designations or changes must be in writing and signed by the Payee (ORIGINAL SIGNATURE REQUIRED). When designating beneficiaries, please indicate the relationship to Payee (i.e. spouse, daughter, son, etc.), how the benefits should be divided (provide percentages), and dates of birth and social security numbers for each named beneficiary. Should any of the named beneficiaries be minors at the time of Payee's death, documentation will be required supporting their guardianship, as payments cannot be made to minors. If two or more beneficiaries are designated and their respective interests are not specified, their interests will be equal (i.e. 50% each). In the event of the death of a beneficiary, any payments due will be divided equally among the surviving beneficiaries. Multiple beneficiaries may not be designated if this would result in any person receiving less than $1,000 per payment.

**SIGNATURE VERIFICATION:**
All requests for information or changes must be in writing and must be signed by the Payee (ORIGINAL SIGNATURE REQUIRED). We verify each signature against signatures in our file. If you are being paid as a beneficiary of the contract, or you were a minor when the agreement was finalized, we may not have your signature on file for verification purposes. In that case, we will ask you to have your signature notarized. Please be assured this is for your protection.

3024 Harney Street • Omaha, Nebraska 68131-3580 • Telephone (402) 916-3100

*A member of the Berkshire Hathaway group of insurance companies*

# BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA

a stock insurance company
Omaha, Nebraska

3024 Harney Street
Omaha, Nebraska 68131
(402) 916-3100

BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA
A Stock Company
3024 Harney Street
Omaha, Nebraska 68131
(402) 916-3100

SINGLE PREMIUM ANNUITY CONTRACT

For valuable consideration, Berkshire Hathaway Life Insurance Company of Nebraska (herein called "BHLN") agrees that it will make the payments described in this Contract in accordance with the terms and conditions thereof. The amount and due date of each payment is shown on the SCHEDULE OF PAYMENTS.

There is no cash value provided under this Contract.

Please read this Contract carefully.

| Contract No.: BN-12-03361 | Contract Date: May 3, 2012 |
|---|---|
| | |

| Owner: BHG Structured Settlements, Inc., a Missouri Corporation | |
|---|---|
| Date of Birth of Measuring Life: September 6, 2004 | |
| Measuring Life: M... K... ... aka K... M... T... | Social Security No.: ... |
| Annuity Commencement Date: September 6, 2022 | |
| Optional Payee: M... K... ... T... aka K... M... ... T... | |
| Contingent Payee (if any): Estate of ... K ... aka K... M... T... | |

Signed for Berkshire Hathaway Life Insurance Company of Nebraska.

_Janelle K Kay_
Assistant Secretary

_Small F. Whinston_
President

10 DAY RIGHT TO EXAMINE CONTRACT

If the Owner returns the contract to BHLN within 10 days after its receipt and requests in writing that BHLN cancel the contract, BHLN will do so and refund the amount received to purchase the annuity.

CONTRACT NO.: BN-12-03361

**BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA**
A Stock Company
3024 Harney Street
Omaha, Nebraska 68131
(402) 916-3100

**SINGLE PREMIUM ANNUITY CONTRACT**

| | |
|---|---|
| Rights of Owner: | The Owner stated on Page 1 of this Contract owns the annuity described in this Contract. The Owner will have the right at any time to designate the payee to whom benefits are payable under the annuity. Unless the Owner otherwise directs, however, Berkshire Hathaway Life Insurance Company of Nebraska ("BHLN") will make all payments under this annuity to the Optional Payee named in this Contract during the lifetime of the Optional Payee and, thereafter, to the Contingent Payee. If no Optional Payee is stated, the Optional Payee shall be the Measuring Life. If the Contingent Payee is not stated on Page 1 of the Contract, the Estate of the Optional Payee shall be the Contingent Payee. |
| | No change in payee will be effective until written notice of the change is received by BHLN. However any change in an Optional Payee or Contingent Payee designation will take effect as of the date the request was signed but without prejudice to BHLN on account of any payment made by it within ten days after its receipt of the request. |
| | The Owner is the sole person entitled to exercise any right or privilege under this Contract. |
| Proof of Living: | BHLN may require proof that the Measuring Life or Optional Payee or Contingent Payee is living on the date on which any annuity payment is to be made. If proof is requested, no payment will be made until the proof has been received by BHLN. |
| Payees: | If two or more Optional Payees or Contingent Payees are designated and their respective interests are not specified, their interests will be several and equal. |
| Change or Waiver: | No sales representative or other person, except an officer of BHLN, may make or change any term or condition of this Contract or make any binding promises concerning this Contract on behalf of BHLN. No modification, interpretation or waiver of any provision of this Contract is valid unless it is in writing and signed by an officer of BHLN. |
| Amendments: | This Contract may only be amended by an endorsement signed by an officer of BHLN and attested by BHLN's Secretary or Assistant Secretary. |

FORM BN-1 (7/94)         Page 2 of 4

CONTRACT NO.: BN-12-03361

**Misstatements:** If the age or sex of the Measuring Life, Optional Payee or Contingent Payee or any other relevant fact has been misstated, BHLN will not pay a greater amount under this Contract than would have been paid by BHLN if the correct information had been provided. Any overpayment of annuity will, together with interest, be deducted from future annuity payments. The interest rate(s) will be that used in determining the purchase price of the annuity.

**Nonassignability of Claims of Creditors:** This Contract and the payments provided under this Contract are nonassignable and will be exempt from the claims of any creditor of the Owner, Optional Payee or Contingent Payee to the maximum extent permitted by law.

**Currency:** Any money BHLN pays, or that is paid to BHLN, must be in United States currency. Any amount BHLN owes will be payable at BHLN's Home Office in Omaha, Nebraska.

**Payee Direction:** BHLN will not be deemed to know of any direction to change payee or of the death of any payee until ten days after such written direction or information is received at our Home Office. BHLN is not obliged to assure that any payment direction is valid or sufficient.

**No Change, No Surrender and No Loan:** No person may change the annuity payments, surrender this Contract for cash or borrow any amount from BHLN under this Contract. Neither the Owner nor any other person has the right to accelerate, defer, increase or decrease any payment required to be made under this Contract.

**No Participation (No Dividends):** This Contract is not eligible for any dividends. Neither the Owner nor any other person shall participate in the profits of BHLN.

CONTRACT NO.: BN-12-03361

**Schedule of Payments:**

BHLN will make payments under this Contract to:

.K    aka K·  ·M·  ·  T
9181 Cerritos Avenue, Apartment 2
Anaheim, California  92804

Commencing September 6, 2022, the sum of One Thousand Seven Hundred Sixty-Five Dollars ($1,765.00) per month, payable on the 6th day of each month, until August 6, 2032 (120 Guaranteed Monthly Payments).

Deferred lump sums payable on the following basis:

| Date of Payment | Payment Amount |
|---|---|
| September 6, 2022 |  |
| September 6, 2027 | |
| September 6, 2032 | |

FORM BN-1 (7/94)                    Page 4 of 4

# Qualified Assignment and Release Agreement
## In Accordance With
## Internal Revenue Code Section 130

"Claimant(s)": K   M   T

"Assignor": City of Garden Grove

"Settlement Agreement": *General Release and Hold Harmless Settlement Agreement dated May 9, 2012*
[Date and exact title of Settlement Agreement, order or other document that sets forth the Assignor's obligation to make the agreed periodic payments]

"Assignee": BHG STRUCTURED SETTLEMENTS, INC.

"Annuity Issuer": BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA

"Effective Date": May 9, 2012

Annuity Contract No.: BN-12-03361

This Qualified Assignment and Release Agreement ("Agreement") is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A. Claimant(s) and Assignor are parties to or are otherwise subject to, and Claimant(s) is/are entitled to receive payments under, the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified in Addendum No. 1 of this Agreement (the "Periodic Payments"); and

B. Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

Now, therefore, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

   i. damages (other than punitive damages), whether by suit or agreement, or

   ii. compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor as of the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at

all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee (as defined in paragraph 8 of this Agreement) shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includable in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee may instruct Annuity Issuer to send payments directly to Claimant, or, if applicable, to a Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford Claimant or any Successor Payee any rights of ownership or control of the Annuity.

    Each Claimant and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant's or Successor Payee's current mailing address and telephone number and, if such Claimant or Successor Payee receives payments by electronic funds transfer (EFT), the name, address, ABA routing number and telephone number of the applicable depository institution and the account name and number of the account to which the payments are to be credited. Such notices shall be in a form reasonably acceptable to Annuity Issuer.

6. **Discharge of Liability.** Assignee's liability to make each Periodic Payment to Claimant or Successor Payee designated to receive such payment shall be fully discharged upon:

    i. the mailing of a valid check on or before the due date for such payment to the address of record specified by Claimant or Successor Payee; or

    ii. the electronic funds transfer (EFT) on or before the due date for such periodic payment to the financial institution account designated by Claimant or Successor Payee.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

    No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate unless otherwise provided in the Settlement Agreement. As used in this Agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee. Except for a designation that is expressly identified in

the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. **Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant(s) of Assignor's liability shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    i. This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of California; provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    ii. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Advice, Comprehension of Agreement.** In entering into this Agreement, each Claimant warrants, represents and agrees that Claimant is solely relying on the attorneys and advisors of such Claimants own choosing, and not upon Assignor, Assignee or their advisors, for legal and tax advice regarding the consequences of this Agreement. Each Claimant further warrants, represents and agrees that the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant. Furthermore, each Claimant hereby releases and discharges Assignor, Assignee, and Annuity Issuer, their respective counsel, and anyone else associated with them from any and all claims, rights, damages, costs or expenses of any nature whatsoever that may hereafter accrue to or be acquired by Claimant by reason of the legal or tax consequences of the Periodic Payments to be made pursuant to this Agreement being other than those anticipated by Claimant.

12. **Description of Periodic Payments.** The Periodic Payments are as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

This Qualified Assignment and Release Agreement is signed in one or more counterparts as of the Effective Date by the following:

Assignor: City of Garden Grove

By: _Steve So. Shen, Esq._
Authorized Representative

Title: _Atty for A's / City_

Assignee: BHG Structured Settlements, Inc.

By: _Janelle K Kay_
Authorized Representative

Title: _Assistant Secretary_

Claimant(s): Quyen Kim Dang, Guardian Ad Litem for K⸺ M⸺ T⸺ a Minor

By: _____
Claimant Signature

Attorney for Claimant(s):

By: _____
Signature

This Qualified Assignment and Release Agreement is signed in one or more counterparts as of the Effective Date by the following:

Assignor: __City of Garden Grove__

Assignee: __BHG Structured Settlements, Inc.__

By: _____
Authorized Representative

By: _____
Authorized Representative

Title: _____

Title: _____

Claimant(s): Quyen Kim Dang, Guardian Ad Litem for K⸺ M⸺ T⸺, a Minor

By: _____*signature*_____
Claimant Signature
QUYEN KIM DANG FOR K⸺ M⸺ T⸺

Attorney for Claimant(s):

By: _____*signature*_____
Signature
LIEM H. DO, ESQ.

## Addendum No. 1
## Description of Periodic Payments

Payee: K█████ M█████████

$█████ per month, guaranteed 10 years, beginning on September 6, 2022. The last payment will be made on August 6, 2032.

$█████ guaranteed lump sum payable on September 6, 2022.

$█████ guaranteed lump sum payable on September 6, 2027.

$█████ guaranteed lump sum payable on September 6, 2032.

INITIALS

Assignor: _____ (City of Garden Grove)

Assignee: _____ (BHG Structured Settlements, Inc.)

Claimant: _____ (Quyen Kim Dang, as GAL for K. M. T.)

Attorney for Claimant: _____

BN-102d (05/2011)         Page 5 of 5

# Addendum No. 1
## Description of Periodic Payments

Payee: K̲     M̲     T̲

$█████ per month, guaranteed 10 years, beginning on September 6, 2022. The last payment will be made on August 6, 2032.

$█████ guaranteed lump sum payable on September 6, 2022.

$█████ guaranteed lump sum payable on September 6, 2027.

$█████ guaranteed lump sum payable on September 6, 2032.

INITIALS

Assignor: _____ (City of Garden Grove)

Assignee: _____ (BHG Structured Settlements, Inc.)

Claimant: _____ (Quyen Kim Dang, as GAL for K     M     T )

Attorney for Claimant: _____

BN-102d (05/2011)        Page 5 of 5



# Columbia Insurance Company

CONTRACT NO.: BN-12-03361
CONTRACT DATE: May 3, 2012

K⋯⋯ aka K⋯ M⋯ T⋯
9181 Cerritos Avenue, Apartment 2
Anaheim, California 92804

## CORPORATE GUARANTEE

Columbia Insurance Company (Columbia Insurance) has determined that it is in the best interest of Columbia Insurance to encourage settling parties to accept and rely on its wholly owned subsidiary BHG Structured Settlements, Inc. (BHGSS) as a third party assignee of qualified assignments in structured settlements, and to encourage BHGSS to purchase annuity contracts from its affiliate, Berkshire Hathaway Life Insurance Company of Nebraska (BHLN), to fund the payment of BHGSS assigned liabilities.

NOW, THEREFORE, Columbia Insurance hereby guarantees the payment obligations of BHGSS, when and as the same may become due, pursuant to the terms of a Qualified Assignment Agreement, Qualified Assignment and Release Agreement or Qualified Assignment Release and Pledge Agreement (collectively, the "Qualified Assignment") (as defined under Section 130 of the Internal Revenue Code of 1986, as amended, or any successor thereto) that BHGSS has entered into with City of Garden Grove on May 9, 2012 pursuant to the General Release and Hold Harmless Settlement Agreement between City of Garden Grove, et al and you on May 9, 2012, and in connection with which BHGSS has purchased an annuity contract from BHLN to fund the payment of BHGSS's assumed liability.

Columbia Insurance agrees that if BHGSS fails to fulfill any of its obligations as assumed under said Qualified Assignment, Columbia Insurance shall undertake such obligations in accordance with the terms and conditions of said Qualified Assignment promptly after receipt of written notice of BHGSS's default.

COLUMBIA INSURANCE COMPANY

Donald F. Wurster
President

3024 Harney Street • Omaha, Nebraska 68131-3580 • Telephone (402) 916-3000 • Facsimile (402) 916-3030

*A member of the Berkshire Hathaway group of insurance companies*